Exhibit "B"

DocuSign Envelope ID: ███████████████



## SECURITY AGREEMENT

This Security Agreement dated August 05, 2022, is executed by Goldcoast Financial LLC ("Debtor") whose principal office (or residence) address is 1425 Madeline Lane, Suite 100, Elgin, Illinois 60124, in favor of Equify Financial, LLC ("Secured Party") whose address is 777 Main Street, Suite 3900, Fort Worth, TX 76102.

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any Schedule to this Agreement, including but not limited to any Security Deposit which might be required pursuant to a Security Deposit Addendum (collectively the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location for a particular item is disclosed (i) on a certificate acknowledging delivery and acceptance thereof or (ii) on such Schedule, and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereon as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if an organization, Debtor is: (i) duly formed, organized, validly existing and in good standing in the state of its organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders, directors, partners, members and/or managers to execute, deliver and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements and other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the tenth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or canceled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss of or damage to the Collateral and for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party shall have no obligation to make any demand upon or give any notice

DocuSign Envelope ID: █████████████████

to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorney's fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate;(d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether or not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, conditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9. Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to. Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10. This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party; and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, recoupment or counterclaim Debtor may have against Secured Party or any prior assignee. Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11. Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of the Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes that the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12. The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined.

DocuSign Envelope ID:

THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect. THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.

13. Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party. Actual notice to Debtor, however given or received, shall always be effective. DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN TARRANT COUNTY, TEXAS, REGARDING ANY DISPUTE WITH SECURED PARTY OR ANY OF SECURED PARTY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH SECURED PARTY, PROVIDED THAT SECURED PARTY MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY OF SECURED PARTY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.

14. If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable. The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15. All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

WITNESS (Attest if a corporation):

. .. ..... ......    .   . ..----.
                                    (Title)

Subscribed and sworn to before me, the undersigned Notary Public, on the date above written.

_____    _____
Notary Public

DEBTOR: Goldcoast Financial LLC

BY:_____ *Dragos Sprinceana* _____
        Name: Dragos Sprinceana        Title: Manager

DocuSign Envelope ID: ███████████████████████



## SCHEDULE "A"

This schedule is attached to and becomes part of a certain Security Agreement dated August 05, 2022.

| QTY | MAKE | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|-----|------|-------|--------------------------|---------------|
| 1 | CIMCR | Cool Globe R8000 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357186 | 527SR5329PL030012 |
| 1 | CIMCR | Cool Globe R8001 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357187 | 527SR5320PL030013 |
| 1 | CIMCR | Cool Globe R8002 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357188 | 527SR5322PL030014 |
| 1 | CIMCR | Cool Globe R8003 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357189 | 527SR5324PL030015 |
| 1 | CIMCR | Cool Globe R8004 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357190 | 527SR5326PL030016 |
| 1 | CIMCR | Cool Globe R8005 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357192 | 527SR5328PL030017 |
| 1 | CIMCR | Cool Globe R8006 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357191 | 527SR532XPL030018 |
| 1 | CIMCR | Cool Globe R8007 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363108 | 527SR5321PL030019 |
| 1 | CIMCR | Cool Globe R8008 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363084 | 527SR5328PL030020 |
| 1 | CIMCR | Cool Globe R8009 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N6001363095 | 527SR532XPL030021 |
| 1 | CIMCR | Cool Globe R8010 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363097 | 527SR5321PL030022 |
| 1 | CIMCR | Cool Globe R8011 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363098 | 527SR5323PL030023 |
| 1 | CIMCR | Cool Globe R8012 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363100 | 527SR5325PL030024 |
| 1 | CIMCR | Cool Globe R8013 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363099 | 527SR5327PL030025 |
| 1 | CIMCR | Cool Globe R8014 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363102 | 527SR5329PL030026 |
| 1 | CIMCR | Cool Globe R8015 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363103 | 527SR5320PL030027 |
| 1 | CIMCR | Cool Globe R8016 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363104 | 527SR5322PL030028 |
| 1 | CIMCR | Cool Globe R8017 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N | 527SR5324PL030029 |

DocuSign Envelope ID: ███████████████

| | | | | |
|---|---|---|---|---|
| 1 | CIMCR | Cool Globe R8018 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001373795 | 527SR5320PL030030 |
| 1 | CIMCR | Cool Globe R8019 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363107 | 527SR5322PL030031 |
| 1 | CIMCR | Cool Globe R8020 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001365819 | 527SR5324PL030032 |
| 1 | CIMCR | Cool Globe R8021 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001356004 | 527SR5326PL030033 |
| 1 | CIMCR | Cool Globe R8022 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001357748 | 527SR5328PL030034 |
| 1 | CIMCR | Cool Globe R8023 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N6001360878 | 527SR532XPL030035 |
| 1 | CIMCR | Cool Globe R8024 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001360879 | 527SR5321PL030036 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party:                                      Debtor:

Equify Financial, LLC                              Goldcoast Financial LLC

By: _____                      By: _____
    Name            Title:              Name: Dragos Sprinccana      Title: Manager

DocuSign Envelope ID: ███████████████████████



## ACKNOWLEDGEMENT OF DELIVERY/INSTALLATION

| 1425 Madeline Lane, Suite 100 | Elgin | Illinois | August 05, 2022 |
|---|---|---|---|
| No. Street | City | State | Date |

TO: EQUIFY FINANCIAL, LLC

RE:     Security Agreement dated August 05, 2022, between Equify Financial, LLC, as Secured Party, and the undersigned, as Debtor(s) (the "Contract").

1. I/We hereby acknowledge complete and satisfactory delivery/installation of the Property described in the Contract.

2. I/We understand that you make no warranties of merchantability or fitness or of any kind regarding the Property described in the Contract, whether express, implied or statutory. I/We further understand that all warranties, if any, are made by the manufacturer(s)/supplier(s) of the Property and are made directly to me/us or, if made to you, you will permit us to assert any warranty claims directly against the manufacturer(s) /supplier(s).

3. I/We understand that you have no facilities to, and cannot, provide servicing of any kind of the Property described in the Contract and that I/we must look to the supplier(s) of the Property or to some other qualified service organization, for any servicing or warranty work. I/We fully understand that any deficiency, failure or misoperation of any Property or any delay, deficiency or failure of any service or warranty work shall not be an excuse for any non-fulfillment, delay or reduction of my/our obligations under the Contract.

4. I/We understand that you have no connection with the supplier(s), other than your relationship as purchaser of the Property/Contract.

5. I/We hereby represent and acknowledge that (i) I/we have knowledge, ability, experience and capacity to evaluate the risks of the transaction evidenced by the Contract; (ii) if the transaction evidenced by the Contract is a sale or lease of the Property, I/we have rejected the Seller's/Lessor's offer to sell the Property described in the Contract for a cash price and, instead, have chosen the higher time price/lease price alternative offered to me/us and evidenced by the Contract; (iii) neither the cash price offered by the Seller/Lessor nor the time price/lease price accepted by me/us materially exceeds the fair market value of the Property described in the Contract; and (iv) all amounts of time price/lease price assessed or charged in excess of the cash price are time price differentials and not interest.

6. I/We further acknowledge, in transactions where you are not the original Secured Party named in the Contract, notice of the intention of said party to sell and assign the Contract to you, and to induce you to purchase and accept an assignment of the Contract I/we hereby acknowledge, represent and warrant to you that the Contract is free from any claims, defenses, offsets or counterclaims and fully recognize your right to enforce the Contract according to its terms.

### (DO NOT SIGN THIS FORM UNTIL THE PROPERTY IS DELIVERED)

| WITNESS: _____ | | DEBTOR: Goldcoast Financial LLC |
|---|---|---|
| Printed Name | | DocuSigned by: *Dragos Sprinceana* |
| By: _____ | | By: _____ |
| Name | Title | Name: Dragos Sprinceana    Title: Manager |

DocuSign Envelope ID: ████████████



## INSURANCE AUTHORIZATION AND VERIFICATION

Date: August 05, 2022

Account Number ████

| To: | Goldcoast Financial LLC "Debtor" | From: | Equify Financial, LLC "Secured Party" |
|---|---|---|---|
| | 1425 Madeline Lane, Suite 100 | | 777 Main Street, Suite 3900 |
| | Elgin, Illinois 60124 | | Fort Worth, TX 76102 |

**TO THE DEBTOR:** In connection with one or more financing arrangements, Secured Party requires proof insurance in the form of a Certificate of Insurance that Secured Party's insurable interest in the financed property (the "Property") meets Secured Party's requirements as follows, with coverage including, but not limited to, fire, extended coverage, vandalism, and theft. In addition, the Insurance Company(ies) providing such coverages must have an A. M. Best Co. Financial Strength Rating of "A-" or better.

**Secured Party, and its successors and assigns shall be covered as LENDER LOSS PAYEE with regard to all equipment.**

**Debtor must carry PROPERTY DAMAGE Insurance for all equipment or vehicles in an amount no less than the Replacement Value with deductibles no more than $5,000.00.**

| MAKE | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|---|---|---|---|
| CIMCR | Cool Globe R8000 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357186 | 527SR5329PL030012 |
| CIMCR | Cool Globe R8001 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357187 | 527SR5320PL030013 |
| CIMCR | Cool Globe R8002 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357188 | 527SR5322PL030014 |
| CIMCR | Cool Globe R8003 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357189 | 527SR5324PL030015 |
| CIMCR | Cool Globe R8004 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357190 | 527SR5326PL030016 |
| CIMCR | Cool Globe R8005 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357192 | 527SR5328PL030017 |
| CIMCR | Cool Globe R8006 | 53' Reefer Trailer with a 2022 Thermo King Precedent S-600 Refrigeration Unit S/N 6001357191 | 527SR532XPL030018 |
| CIMCR | Cool Globe R8007 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363108 | 527SR5321PL030019 |
| CIMCR | Cool Globe R8008 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363084 | 527SR5328PL030020 |
| CIMCR | Cool Globe R8009 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N6001363095 | 527SR532XPL030021 |
| CIMCR | Cool Globe R8010 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363097 | 527SR5321PL030022 |
| CIMCR | Cool Globe R8011 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363098 | 527SR5323PL030023 |
| CIMCR | Cool Globe R8012 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N | 527SR5325PL030024 |

DocuSign Envelope ID: ██████████████████

| | | | |
|---|---|---|---|
| CIMCR | Cool Globe R8013 | 6001363100<br>53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363099 | 527SR5327PL030025 |
| CIMCR | Cool Globe R8014 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363102 | 527SR5329PL030026 |
| CIMCR | Cool Globe R8015 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363103 | 527SR5320PL030027 |
| CIMCR | Cool Globe R8016 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363104 | 527SR5322PL030028 |
| CIMCR | Cool Globe R8017 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001373795 | 527SR5324PL030029 |
| CIMCR | Cool Globe R8018 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001363107 | 527SR5320PL030030 |
| CIMCR | Cool Globe R8019 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001365819 | 527SR5322PL030031 |
| CIMCR | Cool Globe R8020 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001356004 | 527SR5324PL030032 |
| CIMCR | Cool Globe R8021 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001357748 | 527SR5326PL030033 |
| CIMCR | Cool Globe R8022 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001360878 | 527SR5328PL030034 |
| CIMCR | Cool Globe R8023 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N6001360879 | 527SR532XPL030035 |
| CIMCR | Cool Globe R8024 | 53' Reefer Trailer with a Thermo King Precedent S-600 Refrigeration Unit S/N 6001357750 | 527SR5321PL030036 |

*Debtor: Please execute this form and return with your document package.* Secured Party will contact your insurance agency to obtain a Certificate of Insurance. Funding will not take place until a Certificate of Insurance is received by Secured Party. Should you have any questions, please contact Equify Financial, LLC at (817) 490-6800.

**By signing, Debtor authorizes the Agent named below to provide Secured Party with a Certificate of Insurance and subsequent renewals to reflect the required coverage as outlined above.**

___ New Information
(Fill out information below)

___ Same Information as last contract
(Information not required)

Agency/Agent: _____

Address: _____

_____

Phone/Fax: _____

E-Mail: _____

**Debtor:** Goldcoast Financial LLC_____
Printed Name

**By:** _Dragos Sprinceana_____
Signature: Dragos Sprinceana    Title: Manager

# iLien Cover Page

Date Printed: 08/11/2022

Debtor:

Goldcoast Financial LLC
1425 Madeline Lane
Suite 100
Elgin, IL 60124



REF3:
REF4:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

UserID:
UserName:
Number of Collateral Pages Attached: 2

Transaction Type: Original
Jurisdiction: IL, Secretary of State

Mail Address (Please send attachments to):
CT Lien Solutions
330 N. Brand Blvd Suite 700
Glendale, CA 91203
FAX: 818-662-4141

DocuSign Envelope ID: ████████████████



## USA PATRIOT ACT DISCLOSURE

Pursuant to the USA Patriot Act [Uniting (and) Strengthening America (by) Providing Appropriate Tools Required (to) Intercept (and) Obstruct Terrorism Act of 2001] [Public Law 107-56 Statute # 115 Stat. 272 (2001)] we are required to gather and maintain proof of parties' identity through photocopies of official records. In order to comply with this requirement and as a condition precedent to entering into the subject transaction, we do hereby require that you provide a picture identification in the form of your driver's license and/or passport.

By signing below, you acknowledge that you have granted Equify Financial, LLC and/or assigns, the right to photocopy your driver's license and/or passport which includes a current picture. Further, you understand that this USA Patriot Act Disclosure and copies of the required documentation will be retained as an integral part of the documentation required for the subject transaction.

AGREED AND ACCEPTED on: August 05, 2022.

Dragos Sprinceana
Printed name:

*Dragos Sprinceana*
Signature

ADDRESS FOR ALL NOTICES:
777 Main Street, Suite 3900
Fort Worth, TX 76102

DocuSign Envelope ID: █████████████

## ⬤ EQUIFY

### DECLARATION OF LIMITED LIABILITY COMPANY
### OR LIMITED LIABILITY PARTNERSHIP AND AUTHORIZATION TO BORROW MONIES AND INCUR LIABILITIES

The undersigned hereby certify to EQUIFY FINANCIAL, LLC ("EFLLC") as follows:

1. We are members in Goldcoast Financial LLC ("Organization"), a Limited Liability Company organized under the laws of the State of Illinois. The principal place of business of the Organization is 1425 Madeline Lane, Suite 100, Elgin, Illinois 60124.

2. The full name and ownership interest of each member is as follows:

| FULL NAME (Print or Type) * | PERCENT OR INTEREST |
|---|---|
| Dragos Sprinceana | 100% |
| | |
| | |
| | |

3. We, the undersigned, being those members described above, constitute all of the members and persons interested in the Organization, and if any other person, firm, or corporation acquires any right, title, or interest in the Organization, the Organization will notify EFLLC immediately; and also agree that any document, instrument, or undertaking heretofore or hereafter so executed on behalf of the Organization shall be as binding on the Organization as though executed by all the members and we hereby ratify and affirm any such act as binding upon the Organization and all its members.

4. If the Organization has an Operating Agreement, the following persons are designated as Managers in the Operating Agreement:

_____

   If the Organization does not have an Operating Agreement, the following persons are hereby designated as Managers:

   Dragos Sprinceana

5. The persons named above as Managers whose signature(s) are subscribed hereto (or any one of them unless otherwise limited below) are authorized for and on behalf of the Organization to:

   a. Enter into and execute on behalf of the Organization one or more agreements with EQUIFY FINANCIAL, LLC or any affiliate thereof, (hereinafter collectively called "EFLLC") relating to the sale, pledge, assignment, negotiation and guaranty to EFLLC of security agreements, conditional sale contracts, chattel mortgages, chattel leases, rental agreements, installment sales paper, promissory notes, real property mortgages, evidences of debt, account receivable and/or other forms of obligations (all herein collectively called "Paper"), now and/or hereafter belonging to and/or acquired by the Organization, and from time to time to modify and supplement such agreements and to make, modify and supplement arrangements with EFLLC as to the terms and conditions on which Paper is to be sold, pledged, assigned, negotiated, secured and guaranteed to EFLLC; and from time to time to sell, pledge, assign, deliver, endorse, negotiate and otherwise transfer, collateralize, secure and guarantee to EFLLC any and all Paper now and hereafter belonging to or acquired by the Organization, and to execute and deliver any and all assignments, schedules, transfers, notes, endorsements, contracts, real and/or personal property mortgages, guaranties, agreements and instruments, all of which may contain such provisions, covenants, terms, conditions, recitals and undertakings as EFLLC may require and any Manager may approve (the execution thereof by any Manager being conclusive evidence of such approval) and to make remittances and payments in respect thereof by checks, drafts or otherwise.
   b. In the name of the Organization, borrow from EFLLC such sum or sums of money, at such time or times, and on such terms as, in the judgment of any Manager may be advisable.
   c. Execute, sell, assign, transfer and deliver to EFLLC and request EFLLC to accept, purchase and/or make one or more advances against one or more items of Paper and, from time to time, to execute any renewal or extensions of said documents.

DocuSign Envelope ID:

d.   In the name of the Organization, and as security for any paper and/or any other obligations or indebtedness of the Organization to EFLLC, or otherwise, to mortgage, assign, pledge or otherwise hypothecate and/or deliver to EFLLC any personal and/or real property and to execute and deliver to EFLLC any and all mortgages, assignments, security agreements and/or hypothecation agreements, all of which shall contain such provisions, covenants, terms, conditions, recitals and undertakings as EFLLC may require and any Manager may approve (the execution thereof by any Manager being conclusive evidence of such approval).

e.   In the name of the Organization, make, execute and deliver to EFLLC the guaranty by the Organization of the debts and obligations now and hereafter incurred by N/A, said guaranty to be in such form and to contain such provisions as the Manager executing the same may deem proper, the act of said Manager in executing the same to be conclusively deemed to be the act of the Organization.

f.   Do and perform all such other acts and things deemed by any Manager necessary, convenient or proper to carry out, implement, modify and supplement any agreement and arrangement with EFLLC.

6.   The foregoing authorizations shall remain in full force and effect until written notice of any amendment or rescission thereof shall have been received by EFLLC, and receipt of such notice shall not affect any action taken prior thereto.

7.   All transactions by any of the persons named above on behalf of the Organization, and in its name, with EFLLC prior to the delivery to EFLLC of this certificate are, in all respects, hereby ratified, confirmed, approved and adopted.

8.   We expressly understand and agree that EFLLC, when dealing with any of these persons herein authorized to act for the Organization in dealing with Organization transactions, shall be entitled to accept the representations of such authorized person or persons that the purpose of exercising the authority herein given is within the scope of the business of the Organization, and EFLLC shall be under no obligation to make any inquiries nor to verify or confirm any of said representations, nor to see to the application of the Organization funds for the purpose so represented. We certify that the signatures appearing hereon are the original, genuine signatures of the members or agents of the Organization herein authorized. The aforedescribed power and authority of each of the undersigned shall continue in full force and effect until actual written notice or revocation is received by EFLLC from one of the undersigned members, whether the same be brought about by dissolution or otherwise. The rights contained herein are in addition to and not in limitation of the rights inherent in a limited liability company or limited liability partnership. If the Organization has an Operating Agreement, this Declaration constitutes an Amendment to such Operating Agreement. If the Organization does not have an Operating Agreement, this Declaration constitutes the Organization's Operating Agreement and shall be signed by all of its members.

Limitations:   None

IN WITNESS THEREOF, we have hereto set our hands and seals, on August 05, 2022.

Witness:_____

*Dragos Sprinceana*

(Member) Dragos Sprinceana

DocuSign Envelope ID: ███████████



## Resolutions of the Corporate Board
Authority to Procure Loans or Leases (Certified Copy)

I, Dragos Sprinceana, Secretary of DMG Consulting & Development, Inc., a corporation, do hereby certify that said corporation is duly organized and existing under the laws of the State of Illinois; that all franchise and other taxes required to maintain its corporate existence have been paid when due and that no such taxes are delinquent; that no proceedings are pending for the forfeiture of its Certificate of Formation/Certificate of Incorporation or for its dissolution, voluntarily or involuntarily; that it is duly qualified to do business in the State of Illinois and is in good standing in such State; that there is no provision of the Certificate of Formation/Certificate of Incorporation or Bylaws of said corporation limiting the power of the Board of Directors to pass the resolution set out below and that the same is in conformity with the provisions of said Certificate of Formation/Certificate of Incorporation and Bylaws; that the Secretary is the keeper of the records and minutes of the proceedings of the meetings of the Board of Directors and that on August 05, 2022, there was held a meeting of the Board of Directors of said corporation, which was duly called and held in accordance with the law and the Bylaws of the corporation, at which meeting all of the Directors were present; and that at said meeting the following resolution was duly and legally passed and adopted and that the same has not been altered, amended, rescinded or repealed and is now in full force and effect:

## Resolutions

BE IT RESOLVED, that any officer of this corporation listed herein, or their/his/her successors in office, are/is authorized for, on behalf of, and in the name of this corporation to:

(a) Negotiate and procure loans and/or leases from Equify Financial, LLC;

(b) Give security for any liabilities of this corporation to Equify Financial, LLC in connection therewith, including the pledge, sale, or assignment, or the granting of a lien, upon any personal property, tangible or intangible, of this corporation; and

(c) Execute in such form as may be required by Equify Financial, LLC, all notes and/or lease agreements and other evidences of such loans and/or lease agreements, all instruments of pledge, assignment or lien, and that none of the same shall be valid unless signed or endorsed by the above-mentioned officers of this corporation; and

RESOLVED FURTHER, that this resolution shall continue in force, and Equify Financial, LLC may consider the holders of said offices and their signatures, respectively, to be and continue as set forth in the certificate of the secretary of this corporation accompanying a copy of this resolution shown delivered to Equify Financial, LLC or in any similar subsequent certificate, until notice to the contrary in writing is duly served on Equify Financial, LLC.

WE HEREBY FURTHER CERTIFY that the following named persons have been duly elected to the offices set opposite their respective names, that they continue to hold these offices at the

DocuSign Envelope ID: ███████████████

present time, and that the signatures appearing hereon are the genuine, original signatures of each respectively (insert name of those with signing authority, such as):

President: <u>Dragos Sprinceana</u>
Print Name            Signature

Vice President: _____
Print Name            Signature

Treasurer: _____
Print Name            Signature

Secretary: <u>Dragos Sprinceana</u>
Print Name            Signature

IN WITNESS WHEREOF, we have hereunto set our hands as Secretary, respectively, of said company on August 05, 2022.

_____, Secretary
Dragos Sprinceana

DocuSign Envelope ID:



## Identification of Shareholders

Equify Financial, LLC ("Equify") and DMG Consulting & Development, Inc. (the "Corporation") are entering into preliminary discussions concerning a financial transaction involving either leasing, financing, and/or refinancing of tangible personal property. In conjunction with such discussions, Equify has requested that DMG Consulting & Development, Inc. (Name of Corporation) provide the following Identification of Shareholders which identifies the Shareholders and related stock ownership as set forth below.

The listing of the Shareholders below is: ☐ a majority of the Shareholders of the Corporation.
                ☐ all of the Shareholders of the Corporation.

| Name | Percentage of Ownership | or | No. of Shares Owned |
|---|---|---|---|
| Dragos Sprinceana | 100% | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The undersigned Shareholders do hereby represent that the names, percentages of ownership and number of shares owned is accurate as presented herein and further authorize Equify to rely upon the information contained herein.

SIGNED on August 05, 2022.

DocuSigned by:

*Dragos Sprinceana*

Shareholder: Dragos Sprinceana